THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KRYSTAL KELLOUGH, KAMISHA ROBERTS, SHAMIKA TULLOH, and COURTNEY ROBERTSON, Individuals<br><br>*Plaintiffs*,<br>vs.<br><br>XTC CABARET (DALLAS), INC., RCI ENTERTAINMENT (TEXAS), INC., RCI HOSPITALITY HOLDINGS, INC, RCI HOLDINGS, INC., RCI MANAGEMENT, INC., and ERIC S LANGAN,<br><br>*Defendants*. | Case No. 3:23-cv-2488 |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs, KRYSTAL KELLOUGH, KAMISHA ROBERTS, SHAMIKA TULLOH, and COURTNEY ROBERTSON (hereinafter collectively "Plaintiffs"), allege the following upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

**I.    NATURE OF THE ACTION**

1.    Plaintiffs allege causes of action against Defendant XTC CABARET (DALLAS), INC., RCI ENTERTAINMENT (TEXAS), INC., RCI HOSPITALITY HOLDINGS, INC, RCI HOLDINGS, INC., RCI MANAGEMENT, INC., ("Defendant" or "XTC CABARET") for damages resulting from Defendant's evading the mandatory minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*.("FLSA") and illegally absconding with Plaintiffs' tips.

2.    Defendant owns and operates a strip club named XTC Cabaret. Plaintiffs' causes of action arise from Defendant's willful actions while Plaintiff KRYSTAL KELLOUGH was

employed by Defendant from approximately 2012 through July 2023. Plaintiff KAMISHA ROBERTS was employed by Defendant from 2012 through June 2023. Plaintiff SHAMIKA TULLOH was employed by Defendant from 2012 through April 2023. Plaintiff COURTNEY ROBERTSON was employed by Defendant from 2015 through October 2023. Throughout their employment with Defendant, Plaintiffs have been denied minimum wage payments as part of Defendant's scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors."

3. Plaintiffs worked at Defendant's principal place of business located at 8550 N. Stemmons Fwy, Dallas, Texas 75247.

4. Defendant failed to pay Plaintiffs minimum wages for all hours worked in violation of 29 U.S.C. §§ 206 the FLSA. Furthermore, Defendant's practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206. The forcing of tips by dancers to other employees and managers and DJs violates 29 C.F.R. § 531.5 which "prohibits an arrangement that tends to shift part of the employer's business expense to the employees." *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594-95 (11th Cir. 2011). A required tip to the DJ each time Plaintiffs worked functioned as a subsidy to Defendant. Defendant had to pay the DJ and/or a House Mom less because they were being tipped by the entertainers.

5. As a result of Defendant's violations, Plaintiffs seek to recover damages for failure to pay minimum wage, violation of the tip credit provisions, and all tips, fees, or fines taken from Plaintiffs, liquidated damages, interest, and attorneys' fees and costs.

II. **PARTIES**

7. Plaintiffs Krystal Kellough, Kamisha Roberts and Courtney Robertson are an

individual adult residents of the State of Texas. Plaintiff Shamika Tulloh is an individual adult resident of the State of Maryland. Plaintiffs were employed by Defendants and qualify as "employees" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1).

8. RCI Entertainment (Texas), Inc. is a Texas Corporation with its principal place of business at 10737 Cutten Road, Houston, TX 77066. At all times mentioned herein, was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). RCI Entertainment (Texas), Inc. may be served via its agent for service of process, Robert D. Axelrod, 1502 Augusta, Suite 320, Houston, TX 77057.

9. XTC Cabaret (Dallas), Inc. is a Texas Corporation with its principal place of business at 8550 N. Stemmons Freeway, Dallas, Texas 75247. At all times mentioned herein, was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). XTC Cabaret (Dallas), Inc. may be served via its agent for service of process, Robert D. Axelrod, 1502 Augusta, Suite 320, Houston, TX 77057.

10. RCI Hospitality Holdings, Inc. is a Texas Corporation with its principal place of business at 10737 Cutten Road, Houston, TX 77066. At all times mentioned herein, was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). RCI Hospitality Holdings, Inc. may be served via its agent for service of process, Robert D. Axelrod, 1502 Augusta, Suite 320, Houston, TX 77057.

11. RCI Holdings, Inc. is a Texas Corporation with its principal place of business at 10737 Cutten Road, Houston, TX 77066. At all times mentioned herein, was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). RCI Holdings, Inc. may be served via its agent for service of process, Robert D. Axelrod, 1502 Augusta, Suite 320, Houston, TX 77057.

12.     RCI Management, Inc. is a Texas Corporation with its principal place of business at 10737 Cutten Road, Houston, TX 77066. At all times mentioned herein, was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). RCI Management, Inc. may be served via its agent for service of process, Robert D. Axelrod, 1502 Augusta, Suite 320, Houston, TX 77057.

13.     Eric S Langan is the President and sole officer/director of XTC CABARET (DALLAS), INC., who executed polices regarding payment to dancers and amanagement of dancers and/or was responsible for determine whether XTC Cabaret (Dallas), Inc. complied with the FLSA. This defendant may be served at 5404 Pine Street, Bellaire, XT 77401, or anywhere he may be found..

14.     Eric S. Langan acted directly or indirectly on behalf of XTC Cabaret (Dallas), Inc., and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA. He exerted operational and management control over Defendants, including day to day management. He was, and is, frequently present at, owned, directed, controlled and managed the operations at Defendants. He also controlled the nature, pay structure, and employment relationship of Plaintiffs. He had at all times relevant to this lawsuit, the authority to hire and fire employees at Defendants, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of Defendants. In particular, he was responsible for determining whether Defendants complied with the FLSA.

15.     The true names, capacities or involvement, whether individual, corporate,

governmental or associate, of all managers and owners of Defendants are unknown to Plaintiffs. Plaintiffs pray for leave to amend this Complaint to show their true names and capacities when the same have been finally determined. Plaintiffs are informed and believe, and upon such information and belief alleges thereon, that each of the unknown Defendants is negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiffs, as is hereinafter alleged.

16. At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because it has had employees at its club engaged in commerce, which has travelled in interstate commerce, including but not limited to full food and non-alcoholic beverage service. Moreover, because of Defendant's interrelated activities, it functions in interstate commerce. 29 U.S.C. § 203(s)(1).

17. Furthermore, Defendants has had, and continues to have, an annual gross business volume in excess of the statutory standard.

18. Plaintiffs are informed and believes that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its owners, employees, representatives, and agents, and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

### III.   VENUE AND JURSIDICTION AND APPLICABLE LAW

19. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. §§ 201, *et seq*.

20. Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendant's club is located in this District and Plaintiffs worked in this District.

IV. **FACTUAL ALLEGATIONS**

21. Defendant operates an adult-oriented entertainment facility located at 8550 N Stemmons Fwy, Dallas, TX 75247. The following picture depicts the outside of the Club.



22. At all times mentioned herein, Defendant was Plaintiffs' "employer(s)" as defined by the FLSA, 29 U.S.C. §203(m).

23. At all times Plaintiffs worked for Defendant (the Relevant Time), Defendant categorized all dancers/entertainers employed by Defendant as "independent contractors" and has failed and refused to pay wages to such dancers/entertainers.

24. At all times during the Relevant Time, Defendant exercised a great deal of operational and management control over the subject club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

25. Plaintiff Krystal Kellough began working as a dancer for Defendant from approximately 2012 through July 2023. Plaintiff Kamisha Roberts began working as a dancer for Defendant from 2012 through June 2023. Plaintiff Shamika Tulloh began working as a dancer for Defendant from 2012 through April 2023. Plaintiff Courtney Robertson began

working as a dancer for Defendant from 2015 through October 2023.

26.     The primary duty of an entertainer is to dance and entertain customers and give them a good experience. Specifically, an entertainer performs stage and table dances, and entertains customers on an hourly basis. Stated differently, entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

27.     Plaintiffs worked and performed at the adult-oriented entertainment facility multiple shifts per week. Plaintiffs were an integral part of Defendants' business which operated solely as an adult-oriented entertainment facility featuring nude or semi-nude female entertainers. On its website, the Club prominently displays scantily clad women next to its motto, "The Largest & Busiest Strip Club in Dallas[1]" and mentions weekly events and food offerings. The Club's Instagram consists of posts featuring women in similar states of deshabille, visual media of entertainers preforming on stage at the Club and other promotional events[2].

28.     Defendants did not pay entertainers and in fact took their tip money in the forms of fees, fines and other coerced/mandatory tip payments.

29.     Defendants exercised significant control over Plaintiffs during their shifts and required Plaintiffs to work an entire shift. Defendants also required Plaintiffs to stay a minimum of six-hours for each shift started and if they tried to leave early, they had to get a slip signed with permission from the DJ who would require a tip. In addition to the signed slip, the Club would then charge an additional fine. Defendants controlled the means and manner in which Plaintiffs could perform. For example, Plaintiffs were required to participate in stage rotation, and would have to pay the DJ a tip in order to be able to skip their rotation. Defendants set the rates charged by Plaintiffs for dances, including $20 minimum for an individual dance.

---

[1] https://www.xtcdallas.com/
[2] https://www.instagram.com/xtc_dallas_official

Defendants also kept a portion of Plaintiffs' tips whenever such were charged by a customer via credit card, with the Club taking 20% of Plaintiffs' customer charges. Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with its rules regarding dancing, and actually did so.

30. Although Defendants allowed entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises and required dancer heels. To comply with the Club's dress and appearance standards, Plaintiffs typically expended approximately one-hundred and twenty (120) minutes of time each shift getting ready for work without being paid any wages for such time getting ready. Plaintiffs would need to apply their makeup at home, and then finish dressing for work in the club. Defendants did enforce the dress code on entertainers, to the extent such may have been required as a sexually oriented business by the City of Dallas and/or State of Texas, in addition to their own Club dress code for dancers.

31. Plaintiffs were compensated exclusively through tips from XTC Cabaret's customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at its establishment. Defendants also charged Plaintiffs for working each shift in the form of a houses fee, which was $150.00 per shift. Defendants also took 20% of Plaintiffs' tips if a customer charged such via credit card. Although Defendants may have given Plaintiffs the cash from customer's credit card charges, the cash represented funds paid by customers that only passed through Defendants' credit card system, and such did not become part of Defendants' gross receipts and did not constitute wages to Plaintiffs.

32. Defendants also required Plaintiffs to share their tips with Defendants and other non-service employees who do not customarily receive tips, including the managers, security

disc jockeys, and the house mother. If Plaintiffs failed to tip the Club staff as expected, they would not be allowed to leave, not be allowed to come in for additional shifts that week, or worse, fired from working at the Club. In this way, the tipouts Plaintiffs paid to Club staff were forced and/or coerced, in violation of §203(m).

14. Defendants further controlled the entertainers by requiring them to sign contracts, which attempt to re-define laws governing employee/employer relationships (amongst other things) which Defendants knew at the time could not be thwarted via contract. The contracts further shifted obligations of the Club to keep records to Plaintiffs, even though federal law clearly required otherwise. Importantly, the contracts subjected Plaintiffs to punishment should they choose to enforce their federal rights to proper compensation, including enforcement of the FLSA, and requiring them to pay back tips earned from customers to the Club. Plaintiffs argue these terms are unenforceable and void on public policy grounds – at a minimum- under Federal wage laws. At the very least, the contracts show Defendants' willful violation of the FLSA. Defendants' failure to pay Plaintiffs in accordance with the applicable laws was willful and not based on good faith and reasonable belief that its conduct complied with the FLSA.

33. Defendants provided and paid for all advertising and marketing efforts undertaken on behalf of Defendants.

34. Defendants paid for the facility used as the Club, maintenance of the facility, the sound system, stages, lights, beverages, and inventory used at the facility.

35. Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial, and all other employees on the premises.

36. Defendants' opportunity for profit and loss far exceeded Plaintiffs' opportunity

for profit and loss from work at the Club.

37. The position of entertainer requires no managerial skill of others, and requires little other skill or education, formal or otherwise. The only requirements to become an entertainer at are "physical attributes" and the ability to dance seductively. The amount of skill required is more akin to an employment position than that of a typical independent contractor.

38. Defendants failed to maintain records of wages, fines, fees, tips, and gratuities and/or service charges paid or received by Plaintiffs, as was required by law. Furthermore, Defendants failed to maintain records of the coerced tips Plaintiffs were forced to make to other employees of the Club, which was also required by law.

39. Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

    a. The time of day and day of week on which the employees' work week begins;

    b. An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

    c. The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

    d. The hours worked each workday and total hours worked each workweek;

    e. The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek;

    f. The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

    g. The dates, amounts, and nature of the items which make up the total additions and deductions;

    h. The total wages paid each pay period; and

    i. The date of payment and the pay period covered by payment. 29 C.F.R. 516.2, 516.5.

40. To the extent Defendants' records are incomplete, inaccurate and/or inadequate, Plaintiffs can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that they intend to rely on *Anderson* to provide the extent of their unpaid work.

V. **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**FAILURE TO PAY MINIMUM WAGE PURSUANT TO THE FLSA, 29 U.S.C. § 206**

49. Plaintiffs hereby incorporates by reference and re-allege each and every allegation set forth in the paragraphs above as though fully set forth herein.

50. Defendant is engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

51. Defendant operates an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in food and non-alcholic beverage service, amongst other things, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

52. Defendant failed to pay Plaintiffs the minimum wage in violation of 29 U.S.C. § 206.

53. Defendant's requirement that Plaintiffs pay fees, fines and tipouts to other XTC CABARET employees violated the "free and clear" requirement of 29 C.F.R. § 531.35, which also caused Defendant to fail to mee the minimum wage in violation of 29 U.S.C. § 206.

54. Based upon the conduct alleged herein, Defendant knowingly, intentionally, and willfully violated the FLSA by not paying Plaintiffs the minimum wage under the FLSA.

55. Throughout the relevant period of this lawsuit, there is no evidence that Defendant's conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendant continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

56. Due to Defendant's FLSA violations, Plaintiffs are entitled to recover minimum wage compensation and all fees, fines and forced tip sharing that Defendant required Plaintiffs to pay in order to work at XTC Cabaret, as well as an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203(M)**

57. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in the paragraphs above as though fully set forth herein.

58. Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

59. At all relevant times, Defendants were an "employer" and/or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

60. Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

61. Defendant operates an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in food and non-alcholic beverage

service, amongst other things, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

62. Under TIPA:

> [a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203(m)(2)(B).

63. Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges, and other coerced and/or mandatory payments to management, house moms, disc jockeys, and floor men in violation of TIPA.

64. Defendants required Plaintiffs to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customers leaving the tips (such as the Club DJs, security, and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

65. Defendants also required Plaintiffs to pay monetary fees and fines to the Club and its staff, in violation of 29 U.S.C. § 203(m), because the only form of compensation Plaintiffs received from their work was tips, which they then had to payout to the Club.

66. Defendants' requirement that Plaintiffs pay fees to Defendants and other XTC Cabaret employees violated the "free and clear" requirement of 29 C.F.R. § 531.35, dipping their wages below that required by 29 U.S.C. § 206, as well as 29 U.S.C. § 203(m).

67. Because Defendants took Plaintiffs' tips, pursuant to 29 U.S.C. § 203(m)(2)(B), Defendants was not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

68.     The contribution Defendants required Plaintiffs to make after each shift was arbitrary and capricious and the distribution was not agreed to by Plaintiffs or other dancers; but rather, was imposed upon Plaintiffs and other dancers. Plaintiffs did not voluntarily tip other XTC Cabaret employees and managers, but rather were forced and/or coerced to do so because Defendants imposed consequences affecting Plaintiffs' employment for failure to tip by Defendants, including but not limited to termination.

69.     By requiring Plaintiffs to pay out their tips to club management and other employees, Defendants "retained" a portion of the tips received by Plaintiffs in violation of the FLSA.

70.     Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiffs.

71.     At the time of its illegal conduct, Defendants knew or showed reckless disregard that the forced tips which Defendants required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. Despite this, Defendants willfully failed and refused to allow Plaintiffs to keep the tips to which they were entitled

72.     Defendants' willful failure and refusal to stop taking the tips Plaintiffs' earned violates the FLSA.

73.     Further, in each purchase, the Club would take 20% of Plaintiffs' tips when customers used credit cards as their method of payments. The amounts charged by XTC Cabaret were above the costs associated with credit card use and would decrease the amount of tips received by Plaintiffs from the customer if a credit card was utilized.

74.     As such, Defendants improperly and willfully offset credit tips to recover costs that exceed the direct fees charged by the credit card companies in direct violation to FLSA

§203(m)(2). Defendants knowingly and willfully charged Plaintiffs these costs over a business decision, rather than as a fee directly attributable to its cost of dealing in credit.

75. On an aggregate basis, Defendants' expenses for collecting and distributing credit card tips to cash, including both credit card issuer fees and expenses for cash-delivery services, always exceeded the offset amount. As such, Defendants improperly and willfully deducted more than the legal costs required by law when making such collections and directly violated FLSA §203(m)(2).

76. As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, "tip-credits," and fees charged—including house fees—as illegal kickbacks, plus interest; and as liquated damages, an amount equal to all misappropriated tips, "tip-credits," illegal kickbacks, mandatory attorneys' fees, costs, and expenses.

### THIRD CAUSE OF ACTION
**FLSA RETALIATION CLAIM AS TO COURTNEY ROBERTSON**

77. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in the paragraphs above as though fully set forth herein.

78. In the preceeding week to Defendant's firing of Plaintiff Courtney Robertson, she requested a copy of Defendant's employment records of the fees, fines, and other monies taken by the Club from her tip money earned from customers at XTC Cabaret Dallas in anticipation of filing the instant FLSA case. The activity of requesting her employment records could 'reasonably be perceived as directed towards the assertion of her rights under the FLSA, 29 U.S.C. § 203(m)(2)(B).

79. In response to requesting her employment records, Defendants fired Plaintiff around October 13, 2023.

80. It is "unlawful for any *person* … to discharge or in any other manner discriminate

against any employee" for making a complaint under the Act, 29 U.S.C. 215(a)(3) (emphasis added).

81. Plaintiff was terminated in retaliation for her requesting documents pertaining to her employment at XTC Cabaret Dallas in preparation for filing this FLSA complaint. Defendants have knowledge of prior dancers' involvement in FLSA cases such as this one, and know the need for their employment records which are required to be kept by the employer to assist in asserting a FLSA claim.

82. As a result of Defendant's retalitiation, Plaintiff lost the oppportunity to earn income. Furthermore, Defendant's retaliation is further evidence of Defendant's control over Plaintiff, including the ability to fire Plaintiff for asserting her federal statutory rights. Plaintiff seeks the payment of the wages she lost and an additional amount in liquidated damages, 29 U.S.C. §216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request of this Court the following relief:

1. For actual damages according to proof at trial of at least $500,000;
2. For special damages according to proof at trial;
3. For liquidated damages;
4. For attorneys' fees;
5. For costs of suit incurred herein;
6. For pre-judgment interest;
7. For post-judgement interest; and
8. For such other and further relief as the tribunal may deem just and proper.

Dated: November 8, 2023                     Respectfully Submitted,

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey
Texas Bar No. 24040864
Leigh Montgomery
Texas Bar No. 24052214
Alexander Kykta
Texas Bar No. 24107841
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
Fax: (888) 276-3455
*jarrett@ellzeylaw.com*
*leigh@ellzeylaw.com*
alex@ellzeylaw.com

***Attorneys for Plaintiffs***